954 F.2d 727
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Saul Esparza SERRANO, Fernando Serrano, Defendants-Appellants.
 Nos. 90-50535, 90-50580.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 5, 1991.
Decided Feb. 12, 1992.
 
 Before JAMES R. BROWNING, FERGUSON and REINHARDT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Authorities arrested Saul Esparza Serrano and Fernando Serrano after they left the scene of a narcotics transaction set up by an informer. The Serranos pled guilty to narcotics charges, but appeal the denial of their motion to suppress evidence claiming that there was no probable cause for their warrantless arrest. In addition, Saul Serrano contends that his post-arrest statements were involuntary and obtained in violation of Miranda v. Arizona, 384 U.S. 436 (1966) and that he did not voluntarily consent to the search of his apartment. We affirm.
 
 BACKGROUND
 
 3
 Defendants Saul Serrano and Fernando Serrano, cousins, were jointly charged with possession with intent to distribute cocaine, 21 U.S.C. § 841(a)(1). Saul Serrano was charged with possession of a firearm by a felon. The Serranos moved to suppress the evidence relating to the seizure of cocaine and Saul Serrano moved to suppress his post-arrest statements. The motions were denied. The Serranos then entered conditional guilty pleas to the counts in the indictment, reserving the right to appeal the denial of the motion to suppress. The district court sentenced Saul to 240 months in prison and Fernando to 145 months.
 
 
 4
 After DEA agent Stephen Georges ("Georges") and others arrested Henry Fuller ("Fuller") in connection with rock cocaine found in his apartment building, Fuller agreed to cooperate. At the agents' direction, Fuller set up a deal with "Saul," his supplier. Fuller went to the meeting place with Jordan, an undercover agent acting as buyer. At the arranged time two men, later determined to be Saul and Fernando Serrano, arrived.
 
 
 5
 The government agents testified that Saul drove up to them and a brief conversation followed, in which both money and drugs were mentioned. Jordan testified that he saw Saul Serrano clutching a bag in the front seat of the car. No deal took place. After the Serranos left, Jordan told Georges that the dope was in the Serranos' car, or was probably in the car.[1]
 
 
 6
 The Serranos emphasize that the police heard only Fuller's end of the conversation arranging the deal. They claim that when Jordan, Fuller and Saul met briefly in the parking lot, there was no mention of drugs or money. According to Saul Serrano's testimony, the drugs were with Fernando at that point, not in the car.
 
 
 7
 Georges and other agents followed the Serranos and Georges gave the command to arrest them a short time later. Fernando's face was injured during the arrest. An agent read Saul Serrano his rights. The record does not disclose more precisely what rights were read. The authorities found a bag containing rock cocaine in the front seat of the car.
 
 
 8
 Georges then ordered his team, with the Serranos, to meet at a nearby hospital parking lot. Here Georges questioned Saul Serrano, who signed a consent form agreeing to a search of his home, where officers seized a triple beam scale, a handgun and cocaine packaging material.
 
 DISCUSSION
 
 9
 I. Determination of Probable Cause to Arrest
 
 
 10
 Defendants argue a lack of probable cause, claiming that the police acted on the uncorroborated statements of a unreliable informant and that Georges manufactured the basis for probable cause after the fact.
 
 
 11
 A warrantless arrest is valid if supported by probable cause. United States v. Hoyos, 892 F.2d 1387, 1392 (9th Cir.1989), cert. denied, 111 S.Ct. 80 (1990). The test for probable cause is whether facts and circumstances within the officer's knowledge are sufficient to justify a prudent person believing that the suspect has committed, is committing, or is about to commit a crime. United States v. Greene, 783 F.2d 1364, 1367 (9th Cir.) (citing Michigan v. De Fillippo, 443 U.S. 31, 37 (1979)), cert. denied, 476 U.S. 1185 (1986).
 
 
 12
 In Illinois v. Gates, 462 U.S. 213 (1983) the Court held that probable cause determinations should be analyzed in light of the "totality of the circumstances." Corroboration may consist of an accumulation of otherwise ambiguous observations by officers if the informant's report is sufficiently detailed, and these details are sufficiently corroborated by the seemingly innocent activities. United States v. Fixen, 780 F.2d 1434, 1437 (9th Cir.1986). An informant's tip is more trustworthy if it relates to future actions of third parties not easily predicted, and the corroborating information demonstrates that it is an accurate prediction. Id. at 1437-38.
 
 
 13
 The district court found that the information possessed by agent Georges at the time he gave the order to arrest the Serranos[2] supported a finding of probable cause. The court found that Fuller's information about Saul Serrano was credible and that the essence of Henry Fuller's testimony was corroborated by the what the agents observed and heard in the supermarket parking lot. The court chose to credit Jordan's testimony that the bag was in the car. This decision is entitled to deference. Anderson v. City of Bessemer City, 470 U.S. 564, 574 (1985).
 
 
 14
 Overall, the district court's findings do not leave a definite and firm conviction that a mistake has been made, United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948), and thus are not clearly erroneous. These findings support the determination of probable cause to arrest the Serranos.
 
 II. Admissibility of Defendant's Statements
 
 15
 Saul Serrano contends that the government has not met its burden of proving that the Miranda rights were read to him and that he made a knowing and intelligent waiver of them.
 
 
 16
 The district court determined that because Saul Serrano admitted that the rights were read, and the officer testified that he read them, all the necessary warnings had been given. The court also found that Saul Serrano had been arrested before and had a sufficient grasp of the English language to understand his rights. These findings are not clearly erroneous.
 
 
 17
 Serrano argues he never affirmatively waived his rights and the government never met its burden of so proving. An explicit waiver is not required, however. North Carolina v. Butler, 441 U.S. 369, 373 (1979) (waiver of Miranda rights need not be explicit but can be inferred from actions and words of person interrogated); see also Terrovona v. Kincheloe, 912 F.2d 1176, 1180 (9th Cir.1990) (valid waiver where rights read, detectives asked questions without asking if defendant waived his rights and defendant answered without affirmatively asserting or waiving his rights), cert. denied, 111 S.Ct. 1631 (1991). Validity of a waiver is determined from the totality of the circumstances, including the background, experience and conduct of the defendant. United States v. Bernard S., 795 F.2d 749, 751 (9th Cir.1986) (citing North Carolina v. Butler, supra ). Given the circumstances found by the judge--Serrano's previous arrests and his statement that he heard his rights--the court's conclusion that Miranda rights were properly waived was not in error.
 
 
 18
 Saul Serrano alleges that various events during the arrest led him to fear violence, causing him to make involuntary statements.[3] The government has the burden to establish the voluntariness of a confession by a preponderance of the evidence. Lego v. Twomey, 404 U.S. 477, 489 (1972).
 
 
 19
 The court properly determined that there was no duress. The lack of duress, coupled with the court's findings on credibility, support the conclusion that the statement was voluntary.
 
 III. Consent to Search
 
 20
 Saul Serrano signed a consent form for a search of his home. He argues that his consent was tainted by his unlawful arrest, which was involuntary as a mere submission to authority and the product of unlawful coercion.
 
 
 21
 Whether consent is voluntary is determined by looking at the totality of the circumstances surrounding the search. United States v. Lindsey, 877 F.2d 777, 783 (9th Cir.1989). The court found that Saul Serrano signed the consent form after his rights were read to him, that he was a knowledgeable and well-spoken individual, that he understood what took place, and that he was not under duress. The finding is not clearly erroneous when viewed in the context of the evidence as a whole. Serrano's citation to the five-factor test of United States v. Castillo, 866 F.2d 1071, 1082 (9th Cir.1988) is also unavailing.
 
 
 22
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The testimony of Georges, Jordan and Fuller varied on this point
 
 
 [2]
 An arresting officer's knowledge of the facts sufficient to constitute probable cause "may be based on the collective knowledge of all the officers involved in the investigation and all of the reasonable inferences that may be drawn therefrom." United States v. Hoyos, 892 F.2d 1387, 1392 (9th Cir.1989), cert. denied, 111 S.Ct. 80 (1990)
 
 
 [3]
 He testified that officers pointed a shotgun at him when they ordered him to stop his vehicle, that he observed an injury to his cousin's face after the arrest, and that an officer hit him in the testicles while transporting him to the parking lot where Georges questioned him. He further claims that he felt intimidated because he was taken to an isolated parking lot rather than the police station